UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Reverend Beck, Ph.D.,**                                   Civil No. 06-1075 (JNE / SRN)

      **Plaintiff,**

   v.                                                                **REPORT & RECOMMENDATION**

**Dr. Stephen Craane,**

      **Defendant.**

---

    Reverend Beck, Pro Se.

    Carolin J. Nearing, Geraghty, O'Loughlin & Kenney, P.A., 55 East Fifth Street, Suite 1100, St. Paul, MN, 55101-1812, for Defendant Dr. Craane.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter comes before the undersigned United States Magistrate Judge on Defendant's Motion for Summary Judgment (Doc. No. 92). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court recommends that the motion be granted.

**I.     FACTUAL AND PROCEDURAL HISTORY**

    Plaintiff, a Minnesota state prison inmate, filed an action pursuant to 42 U.S.C. § 1983 in March 2006 against numerous individuals, including Defendant, Dr. Stephen Craane. (Doc. No. 1.) Subsequently, Plaintiff chose to pursue claims only against Dr. Craane in order to qualify for IFP status and in November 2007, the claims against the other defendants were dismissed. (Doc. No. 75 (Order of Nov. 28, 2007, adopting Report and Recommendation (Doc. No. 61).)  On July 21, 2008, Defendant brought this motion for summary judgment.

    The events giving rise to Plaintiff's complaint occurred at the Minnesota Department of Corrections Oak Park Heights prison facility, where Plaintiff was previously incarcerated.

(Complaint at 15.) Defendant is an independent contractor physician who provides medical care and treatment to inmates through a contract between the Department of Corrections and Correctional Medical Services, Inc. (Def.'s Mem. in Supp. Mot. Summ. J., Aff. of Dr. Craane ¶ 3). Plaintiff contends that Defendant conspired with Department of Corrections employees to deny him use of a wheelchair and conspired with "multiple defendants to continually deny" him unspecified "urgently needed" medical attention. (Complaint, ¶ 7.) Plaintiff alleges that from January 19, 2006 through the date of the filing of his Complaint, March 3, 2006, Defendant violated his Eighth Amendment rights by denying him use of a wheelchair and by refusing to provide him with medical attention for lower back, flank and renal pain. (Id.)

Defendant moves for summary judgment, arguing that, as a matter of law, Plaintiff has failed to establish that Defendant was deliberately indifferent to a serious medical need, in violation of Plaintiff's Eighth Amendment rights, and that Plaintiff has failed to state a claim of civil conspiracy. Plaintiff responds by reasserting his previously filed Motion for Judgment as a Matter of Law (Doc. No. 81) as his opposition to Defendant's Motion for Summary Judgment. (Doc. No. 97 (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J.).)

## II. DISCUSSION

With respect to a claim of deliberate indifference, the Court applies the same standard as it would in addressing a motion for summary judgment in any other context. The court considers "the facts in the light most favorable to the nonmoving party" and grants summary judgment only where "no genuine issues of material fact exist and the moving party is entitled to judgment as a mater of law." Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1118 (8th Cir. 2007).

It is now beyond dispute that the protections afforded by the Eighth Amendment's Cruel

and Unusual Punishment Clause extend beyond the sentence imposed on a criminal defendant to also encompass the conditions of confinement at a federal prison. Thus a federal prisoner may premise an Eighth Amendment claim on (among other things) the "deliberate indifference to serious medical needs" as "manifested by prison doctors in their response to the prisoner's needs" and thereby state a cause of action under Section 1983. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. In the present context,

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

Id. at 105-06. In short, allegations of mere negligence do not suffice; "to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106 & n.14. Accord Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (stating that "[m]ere negligence or medical malpractice" is "insufficient to rise to a constitutional violation"); Hart v. Bertsch, 529 F. Supp. 2d 1032, 1038 (D.N.D. 2008) ("This entails a showing of something more than mere negligence or medical malpractice.").

Thus, a "prima facie case alleging such deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded that need." Meuir, 487 F.3d at 1118. This standard "involves both an objective and a subjective component:" that is, (1) that the prisoner "suffered objectively serious medical needs," and (2) "that the prison officials actually knew of but deliberately disregarded those needs." Dulany, 132 F.3d at 1239. To survive

3

summary judgment, such a plaintiff faces "a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." Meuir, 487 F.3d at 1118.

As Plaintiff has limited the relevant time period from January 19, 2006 to the filing of the Complaint on March 3, 2006 (Complaint ¶ 7), the Court's decision focuses on that time period only. To place Plaintiff's medical claims in context, however, the Court provides a summary of Plaintiff's relevant medical records for a short period before and after the relevant time period.

Plaintiff was diagnosed with IgA nephropathy in 2005 (Def.'s Mem. Supp. Mot. Summ. J., Ex. C , 8/29/05 Practitioner Note). This condition is a chronic kidney disorder that interferes with the kidney's abilities to remove waste and excess fluid from the body. (Def.'s Mem. Supp. Mot. Summ. J., Craane Aff. ¶ 5) While Plaintiff's condition did not cause pain or require treatment, it did result in blood and protein in the urine. (Id., Ex. C, 8/29/05 Practitioner Note).

On July 22, 2005, Plaintiff met with Dr. Virginia Mandac at the Minnesota Correctional Facility in Rush City, after being transferred from the Oak Park Heights facility. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 7/22/05 Practitioner Note). Plaintiff claimed the inability to walk due to his IgA nephropathy and requested the delivery of meals. (Id.) Dr. Mandac noted that Plaintiff was able to walk to his appointment. (Id.) In addition, Dr. Mandac consulted with Plaintiff's previous treating physician. (Id.) The other physician stated that Plaintiff should be able to walk at least a half a block and when Dr. Mandac conveyed that to Plaintiff, he agreed. (Id.) Plaintiff also agreed that he was able to attend meals. (Id.).

On August 3, 2005, Dr. Peter Troedson saw Plaintiff, who reported concerns about hematuria, or blood in the urine. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 8/3/05 Practitioner Note). Plaintiff believed that ambulating worsened this condition and again requested meals in

his room. (Id.) Dr. Troedson consulted with Plaintiff's nephrologist, who advised that IgA nephropathy should not prevent Plaintiff from walking to the cafeteria for meals. (Id.) Dr. Troedson performed a neurologic exam and noted a deficit in Plaintiff's ability to balance, along with some absent reflexes on his left side. (Id.) Also, Dr. Troedson noted that a prior neurologist who treated Plaintiff had advised against Plaintiff walking long distances. (Id.) Dr. Troedson advised that if a wheelchair were available, that would be an acceptable way for Plaintiff to reach the cafeteria. (Id.) Plaintiff, however, objected to the suggestion that another inmate wheel him to the cafeteria, stating that he would prefer to walk. (Id.) Dr. Troedson told Plaintiff to follow up with him as needed. (Id.)

Next, Plaintiff saw Dr. Sharon Barney on August 25, 2005, reporting ambulation concerns and again requesting meals in his room. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 8/25/05 Practitioner Note). Dr. Barney noted that the delivery of meals to inmates' rooms was not generally allowed at the facility. (Id.) Instead, the doctor authorized wheelchair use. (Id.)

A few days later, Plaintiff saw Dr. Dayton Burkholder, with whom he had dealt in the past. (Ex. C, 8/29/05 Practitioner Note). Dr. Burkholder evaluated Plaintiff regarding possible work restrictions, the delivery of meals to his cell, wheelchair use and whether Plaintiff should have a single cell. (Id.) Dr. Burkholder noted:

> I advised the patient that on the basis of complete review of his recent medical charts, my previous knowledge of him, and present findings reported by other examiners, that I would recommend that he has no work restrictions, that there is no medical indication for him to have meals delivered in his cell, that there is no medical indication for a single cell, nor any medical indication for a wheelchair.

(Id.)

Plaintiff's medical records do not reveal further discussions of his IgA nephropathy until January 2006. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 1/3/06 Practitioner Note). By January

2006, Plaintiff had been transferred back to the Oak Park Heights facility, where Defendant, Dr. Craane, evaluated him on January 27, 2006 for complaints related to a cough and dyspnea. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 1/27/06 Practitioner Note).  The notes record no discussion of Plaintiff's IgA nephropathy or ambulation concerns.  (Id.)  This is the only visit with Defendant that falls within the January 19 - March 3, 2006 time period identified by Plaintiff in the Complaint.

Defendant next saw Plaintiff on March 15, 2006 for reevaluation of his IgA nephropathy and ambulatory status.  (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 3/15/07 Practitioner Note). Plaintiff insisted that he needed the use of a wheelchair to be transported for any extended distance, with his primary concern being access to the law library.  (Id.)  Plaintiff reported no muscle weakness or difficulties ambulating, but made repeated references to hematuria issues. (Id.)  Defendant noted, "[Plaintiff] indicates that this facility [Oak Park Heights] has been the only facility not to grant him a wheelchair for distances and indicates his plan to file further lawsuits to obtain a wheelchair permit for this facility for himself."  (Id.)  Defendant assessed that Plaintiff had the ability to shift between seated and standing positions without difficulty; was able to ambulate around his cell, kneel and rise from a kneeling position; Plaintiff was even able to "walk" in the kneeling position without apparent difficulty.  (Id.)  Defendant stated that no issue was identified that would require Plaintiff to use a wheelchair.  (Id.)

On May 18, 2006, Defendant saw Plaintiff again for multiple concerns as well as reevaluation for job placement at the facility.  (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 5/18/06 Practitioner Note). Plaintiff expressed interest in obtaining employment, but believed that he would need a chair present, should he suffer from back pain.  (Id.)  Plaintiff did not believe that the standing restrictions previously placed upon him were still necessary.  (Id.)

6

Based on his examination, Defendant observed that Plaintiff's gait was based and stable and that Plaintiff was able to shift between supine, seating and standing positions readily and without hesitation. (Id.)

Defendant next saw Plaintiff on June 29, 2006, when Plaintiff presented with skin lesions and reevaluation of asthma. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 6/29/06 Practitioner Note). Defendant prescribed a course of treatment for the skin lesions and noted that Plaintiff's asthma was under better control. (Id.) Approximately one week later, Plaintiff presented with concerns about his skin lesions and job placement. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 7/6/06 Practitioner Note). Defendant noted that Plaintiff was able to ambulate freely and did not sit at any time during his visit. (Id.) Plaintiff expressed concerns related to the Americans with Disabilities Act ("ADA") and his work placement, prompting Defendant to tell Plaintiff to notify both him and the ADA committee should Plaintiff continue to experience difficulties in the free use of a chair allowed him by the facility's ADA committee. (Id.) Plaintiff agreed with this plan. Defendant advised him to notify the clinic should he experience further difficulties. (Id.)

Defendant next saw Plaintiff on August 14 and 21, 2006 and September 6, 2006, related to an abscess on his chest and/or dermatitis. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 8/14/06, 8/21/06 and 9/6/06 Practitioner Notes). On October 9, 2006, Plaintiff presented to Defendant for a reevaluation of a right inguinal hernia. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 10/9/06 Practitioner Note). Plaintiff noted increasing discomfort associated with his prison job and was apparently unable to access his chair as often as he would like. (Id.) Consequently, he requested a modification of his work authorization to allow him a job requiring seating at all times. (Id.) Defendant noted, "a request was filed in June 2006 to obtain a surgical reevaluation of the patient's right inguinal surgical site; unfortunately, the patient's litigious nature has frustrated

7

attempts to schedule such an evaluation." (Id.) Defendant recommended discussing Plaintiff's condition with "CMS Central Office Staff" to determine how to proceed with an evaluation of Plaintiff's condition. (Id.) Also, Defendant noted that he might need to discuss Plaintiff's condition with the facility's Health Services Administrator and the ADA representative to determine if Plaintiff needed further workplace accommodations. (Id.)

On November 3, 2006, Defendant consulted with another doctor to see if he was willing to reevaluate Plaintiff's hernia site, but due to "this patient's litigious nature and the fact that he ha[d] an active lawsuit against" this particular doctor, he instead recommended that Plaintiff be seen elsewhere. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 11/3/06 Practitioner Note). Defendant noted that he had discussed Plaintiff's request for modification in his authorization with the Health Services Administrator, but that no modification was deemed necessary at that time. (Id.)

Plaintiff saw Defendant again on November 6, 2006 and January 4 and 18, 2007, for reevaluation of his hernia and headaches. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 11/6/06, 1/4/07 and 1/18/07 Practitioner Notes).

Defendant maintains that in all of his dealings with Plaintiff, whether for evaluation of his IgA nephropathy or for other medical concerns, he took Plaintiff's concerns seriously and used his medical experience and clinical judgment to evaluate his needs and provide appropriate treatment. (Def.'s Mem. Supp. Mot. Summ. J., Craane Aff. ¶ 6). At no time did Defendant refuse to provide treatment. Rather, Defendant attests that he often acted as an advocate for Plaintiff, attempting to find off-site evaluation or treatment. (Id., ¶¶ 7-8).

### A. Eighth Amendment Claims of Deliberate Indifference

Here, even assuming that Plaintiff's claimed lower back, flank or renal pain constitutes a

serious medical need, there is no showing that Defendant deliberately disregarded that need, or otherwise deliberately refused Plaintiff necessary medical attention. The same is true with respect to Plaintiff's claims that his requests for a wheelchair were met with deliberate indifference. Rather, the record reflects that Defendant consistently provided adequate medical care and treatment to Plaintiff and discussed various plans of care with him. "[I]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Looking at the medical records for the applicable time period, from January 19, 2006 through March 3, 2006, Defendant saw Plaintiff on one occasion: January 27, 2006. At that time, Plaintiff reported symptoms associated with a cold. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 1/27/06 Practitioner Note). Notably, Plaintiff reported no problems associated with lower back, flank or renal pain, IgA nephropathy, or issues related to the use of a wheelchair – in other words, Plaintiff reported no problems related to the allegations in his Complaint.

Nor does the medical record reflect that Defendant denied Plaintiff any kind of treatment from January 19, 2006 to March 3, 2006, including the use of a wheelchair. As to Plaintiff's IgA nephropathy, which might constitute an objectively serious medical need, there is likewise no evidence that Defendant knew of a need for treatment and disregarded it. On one occasion near the applicable time frame, Plaintiff presented for evaluation of IgA nephropathy and flank pain, but at that visit Defendant reported that Plaintiff's condition remained stable. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C, 3/15/06 Practitioner Note). Moreover, Defendant's affidavit indicates that he not only took Plaintiff's medical concerns seriously, but that he advocated on


Plaintiff's behalf.  (Def.'s Mem. Supp. Mot. Summ. J., Craane Aff. ¶¶ 6, 8).

Plaintiff has produced no evidence of any treatment or evaluation by Defendant during the applicable time period, other than the January 27, 2006 evaluation of symptoms associated with a cold.  Instead, Plaintiff submits the arguments raised in his Motion for Judgment as a Matter of Law (Doc. No. 81) in opposition to the instant motion.  (Doc. 97, Mem. in Opp. to Def.'s Mot. for Summ. J.).   This Court has addressed the procedural failings in Plaintiff's Motion for Judgment as a Matter of Law in its previous Report and Recommendation of June 12, 2008 (Doc. No. 89), adopted by the District Court on July 14, 2008 (Doc. No. 91).  The procedural failings previously identified still apply to the present situation in that a motion for judgment as a matter of law is confined to the context of a jury trial.  See Fed. R. Civ. P. 50.  However, reviewing Plaintiff's arguments therein on the merits, Plaintiff alleges new facts, related to surgery involving his testicle and the use of oxygen, but fails to offer additional facts or evidence that support his original allegations.

In addition, nothing in the record evidences the requisite state of mind of prison officials that could elevate his claim to the level of one for deliberate indifference to his medical needs.  Plaintiff's claim fails to meet the state-of-mind standard for maintaining such an Eighth Amendment action, which requires facts that could establish the requisite type and degree of subjective culpability.  As the Supreme Court has clarified, the "deliberate indifference" necessary to support an Eighth Amendment claim requires a "showing that the official was subjectively aware of the risk."  Farmer v. Brennan, 511 U.S. 825, 828 (1994).

> A prison official violates the Eighth Amendment only when two requirements are met.  First the deprivation alleged must be, objectively, "sufficiently serious" . . . .  The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."  In prison-conditions cases that state of mind is one of

"deliberate indifference to inmate health or safety."

Id. at 834 (internal citations omitted). This requires "a state of mind more blameworthy than negligence"–that is, "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Id. at 835 (quoting Whitney v. Albers, 475 U.S. 312, 319 (1986)).

The Court expressly rejected "an objective test for deliberate indifference," holding instead that a prison official cannot be liable under the Eighth Amendment

> unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. In short, a plaintiff must establish "subjective recklessness as used in the criminal law." Id. at 839. The Court cautioned that under this "requirement of subjective culpability," it is "not enough merely to find that a reasonable person would have known, or that the defendant should have known" of the risk. Id. at 843 n.8. And even actual knowledge of the risk coupled with the occurrence of the harm posed by that risk does not result in liability if the prison official acted reasonably. Id. at 844-45. In sum, a prison official may be held liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

In sum, Plaintiff has not stated any viable constitutional claim of "deliberate indifference" to his medical needs. Nothing here amounts to the "unnecessary and wanton infliction of pain" or is otherwise "repugnant to the conscience of mankind" so as to constitute an Eighth Amendment violation under Estelle, 429 U.S. at 105-06.

### B.     Conspiracy Claims

Plaintiff also claims that Defendant conspired with "multiple defendants to continually

deny" him unspecified, "urgently needed" medical attention, in violation of 42 U.S.C. § 1983. (Complaint ¶ 7.) To prove a § 1983 conspiracy claim against a particular defendant, a plaintiff must show: "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." Askew v. Millerd, et al., 191 F.3d 953, 957 (8th Cir. 1999). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. Id.

For the reasons discussed above, Plaintiff has failed to establish a deprivation of a constitutional right under the Eighth Amendment. He has not specified the urgently needed medical care that he alleges was lacking, much less identified the co-conspirators or specified how their overt actions injured him. Plaintiff has offered nothing more than the allegations in his Complaint and viewing those allegations in the light most favorable to Plaintiff, his § 1983 claim fails as a matter of law.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant's Motion for Summary Judgment (Doc. No. 92) be GRANTED; and
2. This action be DISMISSED WITH PREJUDICE.

Dated: November 6, 2008

s/Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **November 21, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.